UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER: (1) AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND TRAP AND TRACE DEVICE; (2) AUTHORIZING THE RELEASE OF SUBSCRIBER AND OTHER INFORMATION; AND (3) AUTHORIZING THE DISCLOSURE OF LOCATION-BASED SERVICES | ) ) ) ) ) ) ) ) ) ) ) ) ) | Cause Nos. 1:06-MJ-23 |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER: (1) AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND TRAP AND TRACE DEVICE; (2) AUTHORIZING THE RELEASE OF SUBSCRIBER AND OTHER INFORMATION; AND (3) LOCATION OF CELL SITE ORIGINATION AND/OR TERMINATION | ) ) ) ) ) ) ) ) ) ) ) ) ) | Cause Nos. 1:06-MJ-24 |

## OPINION AND ORDER

Pursuant to 18 U.S.C. §§ 2703(d), 3123(a), 3123(b)(2), and 3124(a), the United States of America, through its attorneys, filed the above two applications under seal for (1) pen registers and trap and trace devices, (2) the release of subscriber and other information, and (3) the disclosure of location-based services. These applications, which we will deny, raise important issues that require some explanation.

In both applications, the government seeks an order requiring cellular telephone companies to disclose to agents of the United States Marshal's Service information regarding the

location of particular cellular telephones.[1] Specifically, the government seeks in its 1:06-MJ-24 application "the numbers called by and numbers called to the Subject [Cellular] Telephone Numbers *as well as the location of the cell phones while in use* . . . ." (Application for Pen Register, Trap and Trace and Telecommunications Records, Cause No. 1:06-MJ-24, 7, emphasis added.) In the 1:06-MJ-23 application, the government requests the "numbers called by and numbers called to *as well as the locations of the cell phone* . . . ." (Application for Pen Register, Trap and Trace and Telecommunications Records, Cause No. 1:06-MJ-23, 5, emphasis added.) Ostensibly, the only difference is that the 1:06-MJ-24 application seeks the "real time" location of the cell phone, while the 1:06-MJ-23 application does not.

In addition, the government requests the following information:

a. Call detail records and/or "fraud buster reports."
b. Cell site activations.
c. Numbers dialed.
d. Incoming numbers if identified.
e. Call durations.
f. Subscriber, ESN and billing information for the specified cellular/wireless telephone.
g. Subscriber, ESN and billing information for any other cellular/wireless telephones on this account or that may be identified from these records.
h. An engineering map, showing all cell-site tower locations/addresses, sectors and orientations.
I. The physical address/location of all cellular towers in the specified market.

(Application for Pen Register, Cause No. 1:06-MJ-23, 1-2; Application for Pen Register, Cause No. 1:06-MJ-24, 1-2.)

---

[1] The 1:06-MJ-23 application requests this location information "for the time period of April 6, 2006, to the present and extending sixty days past the date of this Order," and the 1:06-MJ-24 application seeks this information "for the time period of January 1, 2006, to the present and extending sixty days past the date of this Order . . . ." (Application for Pen Register, Cause No. 1:06-MJ-23, 1; Application for Pen Register, Cause No. 1:06-MJ-24, 1.)

As authority for its requests regarding cell site location information, the government cites to the Pen Register and Trap and Trace Devices Statute ("Pen Register Statute"), 18 U.S.C. § 3127(4), and the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2703.

The cited provision of the Pen Register Statute defines a trap and trace device, for example, as a "device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and *signaling information* reasonably likely to identify the source of a wire communication . . . ." 18 U.S.C. § 3127(4) (emphasis added). Courts have held that the term "signaling information" encompasses cell site information data. *See, e.g., In re Application of the United States of Am. for an Order for Disclosure of Telecomms. Records & Authorizing the Use of a Pen Register & Trap & Trace*, 405 F. Supp. 2d 435, 438-39 (S.D.N.Y. 2005) [hereinafter *S.D.N.Y. Decision*]; *In the Matter of the Application of the United States of Am. for Orders Authorizing the Installation & Use of Pen Registers & Caller Identification Devices on Tel. Nos.*, 416 F. Supp. 2d 390, 393-94 (D. Md. 2006) [hereinafter *D. Md. Decision*].

The showing required to install a trap and trace device is also quite low: "[T]he Government need only identify the law enforcement agency conducting the investigation and certify that the information likely to be obtained is 'relevant to an ongoing criminal investigation' being conducted by the agency." *S.D.N.Y. Decision*, 405 F. Supp. 2d at 437 (quoting 18 U.S.C. § 3122(b)(1)-(2)).

The Pen Register Statute is read in conjunction with the Communications Assistance for Law Enforcement Act of 1994 ("CALEA"), 47 U.S.C. § 1002, which requires telecommunication carriers to ensure that they have the ability to provide law enforcement

3

agencies with certain "call-identifying information that is reasonably available to the carrier . . . ." 47 U.S.C. § 1002(a)(2). This provision of CALEA contains the following exception: "[W]ith regard to information acquired *solely* pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of Title 18), such call-identifying information shall not include any information that may disclose the physical location of the subscriber . . . ." 47 U.S.C. § 1002(a)(2) (emphasis added).

This exception has sparked a debate among Magistrate Judges regarding the ability to use the Pen Register Statute as authority for obtaining cell site location information. Proponents of the so-called "hybrid" or "convergence" theory advance that the Pen Register Statute, in combination with the SCA, authorizes the government to obtain various types of cell site location information.[2] *See, e.g., S.D.N.Y. Decision*, 405 F. Supp. 2d 435; *In the Matter of the Application of the United States for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device; & (2) Authorizing Release of Subscriber Info. and/or Cell Site Info.*, 411 F. Supp. 2d 678, (W.D. La. 2006); *In the Matter of the Application of the United States of Am. for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device, & (2) Authorizing Release of Subscriber & Other Info.*, Misc. Case No. H-06-0085, slip op. (S.D. Tex. Apr. 10, 2006); *In re: Application for an Order Authorizing the Installation & Use of a Pen Register Device, Trap & Trace Device, Dialed No. Interceptor, No. Search Device, & Caller Identification Serv.*, No. S-06-SW-0041, slip op. (E.D. Cal. March 15, 2006).

The hybrid theory is rejected by those courts who view CALEA as prohibiting any reliance on the Pen Register Statute for obtaining cell site location information, leaving the

---

[2] Because the government cites both the Pen Register Statute and the SCA in support of its applications, it is ostensibly advancing the hybrid theory.

4

government to the alternative of obtaining a warrant under Federal Rule of Criminal Procedure 41. *See, e.g., D. Md. Decision*, 416 F. Supp. 2d 390; *In the Matter of the Application of the United States of Am. for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F. Supp. 2d 134 (D.D.C. 2006) [hereinafter *D.D.C. Decision*]; *In the Matter of the Application of the United States of Am. for an Order Authorizing the Disclosure of Prospective Cell Site Info.*, 412 F. Supp. 2d 947 (E.D. Wis. 2006) [hereinafter *E.D. Wis. Decision*]; *In the Matter of the Application of the United States of Am. for an Order Authorizing the Installation & Use of a Pen Register and/or Trap & Trace Device for Mobile Identification No. (585) 111-1111 & the Disclosure of Subscriber & Activity Info. under 18 U.S.C. § 2703*, 415 F. Supp. 2d 211 (W.D.N.Y. 2006) [hereinafter *W.D.N.Y. Decision*]; *In re Application of the United States for an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel.*, No. CRIM MISC 01, at *1-2 (S.D.N.Y. Feb. 28, 2006).[3] Just recently, Magistrate Judge Nuechterlein of this Court added his voice to this particular chorus. *See In the Matter of the Application of the United States of Am. for an Order for Disclosure of Telecomms. Records & Pen Registers*, Cause No. 3:06-MJ-37 CAN, slip op. (May 10, 2006).

Nevertheless, proponents of the hybrid theory hold that the use of the word "solely" in section 1002 is significant because it demonstrates Congressional intent that "'another' mechanism may be combined–albeit in some unspecified way–with the Pen Register Statute to authorize disclosure of cell site information." *S.D.N.Y. Decision*, 405 F. Supp. 2d at 442. This "other" mechanism is ostensibly the SCA. *Id.* at 444-49. Specifically, hybrid theory proponents

---

[3] As a threshold matter, both lines of cases have rejected any attempt by the government to obtain "real time" location information. *See, e.g., S.D.N.Y. Decision*, 405 F. Supp. at 450; *D.D.C. Decision*, 407 F. **Supp.** 2d at 134, 140. Therefore, the 1:06-MJ-24 application seeking "the location of the cell phones *while in use* . . ." fails under either analysis.

5

borrow the SCA's higher standard requiring the government to offer "specific and articulable facts showing . . . reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). These courts reason that "section 2703 thus fulfills the apparent purpose of the section 1002 exception: to require something different from . . . the 'minimal[ ]' authorization requirement imposed by the Pen Register Statute." *S.D.N.Y. Decision*, 405 F. Supp. 2d at 448.

Opponents of the hybrid theory reject this interpretation of the section 1002 exception by pointing out that "there is nothing in the express language of the Pen [Register] Statute, CALEA or [SCA] which instructs judges to follow th[is] particular . . . theory . . . ." *W.D.N.Y. Decision*, 415 F. Supp. 2d at 214. Indeed, the theory attributes to Congress the view that they could, by simply inserting the term "solely" into the exception clause, splice together (through a labyrinthian analysis) fifteen years of separate statutory enactments. *See Id.* at 215. The proposition becomes even more dubious when it is asserted that that analysis yields a new and independent authority for obtaining cell site location information. *See Id.*; *In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 765 (S.D. Tex. 2005) ("The government's hybrid theory, while undeniably creative, amounts to little more than a retrospective assemblage of disparate statutory parts to achieve a desired result.").

This Court finds that reasoning persuasive. Courts who oppose the hybrid theory examined the legislative history of the section 1002 exception, specifically the comments made by then FBI director Louis Freeh during his testimony before the Senate and the House. Indeed, Freeh, in addressing what he thought was Congress's concern over legislation requiring telecommunications carriers to provide "call setup information" permitting the tracking of

persons, offered this rationale:

> The term "call setup information" is essentially the dialing information associated with any communication which identifies the origin and destination of a wire or electronic communication obtained through the use of a pen register or trap and trace device pursuant to court order. It does not include any information which might disclose the general location of a mobile facility or service, beyond that associated with the area code or exchange of the facility or service. There is no intent whatsoever, with reference to this term, to acquire anything that could properly be called "tracking" information.

Statement of Louis J. Freeh, Director, FBI, Before the Subcomm. on Tech. & the Law of the Comm. on the Judiciary, United States Senate, & the Subcomm. on Civil & Constitutional Rights of the Comm. on the Judiciary, House of Representatives (March 18, 1994), *available at* 1994 WL 223962, at *23 [hereinafter, Freeh Statement].

And Freeh later testified:

> Even when such generalized location information, or any other type of "transactional" information, is obtained from communications service providers, court orders or subpoenas are required and are obtained. In order to make clear that the acquisition of such information is not being sought through the use of a pen register or trap and trace device, and is not included within the term "call setup information," we are prepared to add a concluding phrase to this definition to explicitly clarify the point: except that such information (call setup information) shall not include any information that may disclose the physical location of a mobile facility or service beyond that associated with the number's area code or exchange.

Freeh Statement at *29.

Courts note that although the actual language adopted by Congress in section 1002 differs somewhat from the language proposed by Freeh, "the language which found its way into the law was predicated on the Director's assertion to Congress that, in the government's view, pen register and trap and trace devices were not to be, and would not be, used to secure location information for the cellular phone user." *E.D Wis. Decision*, 412 F. Supp. 2d at 956. Therefore,

any reliance on the Pen Register Statute as authority to obtain cell site locations is "counter-intuitive." *See W.D.N.Y. Decision*, 415 F. Supp. 2d at 217 ("In the face of such testimony, it makes no sense to me that, by the use of the word "solely" in 47 U.S.C. § 1002(a)(2), Congress was in some back-handed fashion intending to allow the SCA to be used in conjunction with the Pen/Trap Statute to obtain the very information that Director Freeh assured Congress he was not seeking the authority to obtain under the proposed legislation.")

Furthermore, these courts opine, correctly we believe, that even if Congress intended the Pen Register Statute to converge with "another" mechanism to authorize disclosure of cell site location information, this "other" mechanism is not the SCA, reasoning that "the SCA simply is not and never was intended to be a statute that authorizes prospective surveillance." *D. Md. Decision*, 416 F. Supp. 2d at 395. (citing *In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d at 760). Most pointedly in this regard, Freeh "assured Congress that the legislation about which he was testifying and urging Congress to pass had nothing to do with, and did not relate to, the SCA . . . ."[4] *E.D. Wis. Decision*, 412 F. Supp. 2d at 957-58; *see also D. Md. Decision*, 416 F. Supp. 2d. at 395.

Of additional concern is the proposition that "real time" data could potentially be

---

[4] Indeed, Freeh's testimony is most telling:
First, as is clearly set forth in the "purpose" section of the proposed legislation, the intent of the legislation is to maintain existing technical capabilities and to "clarify and define the responsibilities of common carriers . . . to provide the assistance required to ensure that government agencies can implement court orders and lawful authorizations to intercept the content of wire and electronic communications and acquire call setup information under Chapters 119 and 206 of Title 18 and Chapter 36 of Title 50.11.["] These chapters have nothing to do with "transactional information" under our federal electronic surveillance and privacy laws. All telecommunications "transactional" information is already protected by federal law and is exclusively dealt with in Chapter 121 of Title 18 of the United States Code ("Stored Wire and Electronic Communications and Transactional Records Access"). The proposed legislation does not relate to Chapter 121 of Title 18.
Freeh Statement at *27-28.

obtained under the hybrid theory. *See W.D.N.Y. Decision*, 415 F. Supp. 2d at 219 ("The government's statutory rationale . . . is not dependent on whether the government obtains real time cell site data before, during, or after a cellular phone call."); *Md. Decision*, 416 F. Supp. 2d. at 395 ("[T]he fact that the information will not be transmitted to the government in real time is irrelevant to the government's statutory rationale."). Indeed, as noted earlier, the government impermissibly seeks real time data in at least one of the applications here.

In light of the foregoing, the Court rejects the hybrid theory authorizing the government to obtain cell site location information upon a showing of "specific and articulable facts showing . . . reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Because the government's applications request cell site location information based on the Pen Register Statute and SCA, the Court cannot approve the applications as submitted. Consequently, the government is left with three options. The government can resubmit the application to establish probable cause in accordance with Federal Rule of Criminal Procedure 41(c)(4), resubmit the application without the request for cell site information, or appeal this decision to the District Court.

SO ORDERED.

Dated for May 17, 2006.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge